IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

VICTORIA DIVISION

| | | |
|---|---|---|
| DAVID MEJIA, #863486 | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. V-13-047 |
| | § | |
| WILLIAM STEPHENS, DIRECTOR | § | |

## REPORT AND RECOMMENDATION

Before the Court by referral from the Honorable Nancy F. Atlas, United States District Judge, is the Motion for Summary Judgment of Respondent, William Stephens, the Director of the Texas Department of Criminal Justice, Correctional Institutions Division; the Motion seeks the dismissal of the Petition for a Writ of Habeas Corpus of Petitioner, David Mejia. Although counsel has been appointed to represent Mejia, the Motion was already ripe for determination and had been throughly reviewed. Accordingly, the Court now issues this Report and Recommendation.

For the purposes of this Report and Recommendation only a skeletal rendition of relevant facts is necessary. On April 17, 1998, Mejia's sister Macarie Flores and her boyfriend Johnny Arce came to his residence. Arce told Mejia that they had been at a local bar when Marcus Torres and a group of his friends had arrived. Because Torres had been harassing Arce for years and had "jumped him" a year earlier, Arce wanted to return to the bar and confront Torres. Arce, however, was worried Torres's friends would interfere. Therefore, Arce wanted Mejia to go with him for protection. As a

result, Mejia, Macarie, Mejia's younger brother Marcus, a friend Martin Martinez and Arce went to the bar. Mejia took a knife with him. As expected, a fight broke out. During the fight Torres went after Marcus. Mejia got between the two and Torres came after him. Mejia tried to back away, but Torres lifted his shirt and tried to pull a pistol from his waistband. Mejia then pulled the knife and stabbed Torres in the heart. Apparently, everyone then fled the scene. Later that day Torres died.

Mejia was charged with murder. He was prosecuted by the District Attorney, Dexter Eaves, and one of his assistants, Ray Hardy. Mejia was represented by Alex Luna. Mejia was convicted and sentenced to life in prison. His conviction was affirmed and his state habeas application was denied without written order. The instant petition followed.

Most of Mejia's claims allege ineffective assistance of counsel. In his state habeas case, the trial court conducted a "paper hearing." The state court findings were simply that Luna's affidavit "is credible" and that he "provided effective assistance." This Court concedes that strong deference must be given even to those sparse findings, but the presumption can be rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). This Court also concedes that there is a strong presumption that Luna's conduct fell within the wide range of reasonable assistance. United States v. Mullins, 3154 F.3d 449, 453 (5th Cir. 2002). Accordingly, the Court must determine whether Mejia's evidence might establish that Luna's performance fell below any objective standard of reasonableness and

that there is a reasonable probability that, but for Luna's errors, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 688, 694 (1984). The different outcome may be at either the guilt or punishment phase of the trial or both. Moore v. Johnson, 185 F.3d 244, 276-77 (5th Cir. 1999). With these standards in mind, the Court will briefly address each of Mejia's claims.

Mejia most promising claim is that Luna's failure to call his brother Marcus as a witness was ineffective assistance. In his affidavit, Marcus avers that he spoke with Luna, told him he saw the pistol in Torres's waistband, offered to testify, but was not called. Luna avers that Mejia never asked him to call Marcus or he would have done so. The Court assumes Luna would deny having interviewed Marcus, but that may not be enough. The failure to interview eye witnesses and witnesses who may possess knowledge of a client's guilt or innocence may strongly support a claim of ineffective assistance. Moreover, Marcus's testimony would not have been merely cumulative: he was the only potential witness who could verify the evidence of Torres's pistol and lend credence to Mejia's self defense claim. Bryant, 28 F.3d at 1418-19. This potentially crucial issue was not developed by the state court, Guice v. Fortenberry, 661 F.2d 496, 506 (5th Cir. 1981) (citing, Townsend v. Sain, 372 U.S. 293, 317 (1981)), and, on the present record in this case, the Court should not attempt to resolve this claim.

Mejia also claims Luna failed to cross-examine six of the state's witnesses about the prosecutor's threats to charge them as accessories to murder unless they testified against him. Accepting Mejia's mis-characterization, Respondent treats this claim as one alleging the witnesses were granted formal immunity from prosecution and because they were not, under applicable state law, Respondent argues that the claim fails. But Mejia's pro se claim seems to really be a <u>Giglio</u>[1] claim. In her affidavit Mejia's sister avers that she was personally warned by Hardy that if she refused to testify the way he wanted her to he would charge her as an accessory to murder and see to it that her children were taken away by Child Protection Services. She also stated that Hardy admitted he had similarly threatened five other witnesses who testified for the state: Johnny Gomez, Arce, Martin Martinez, Lorenzo Dominguez and John Lopez. This Court cannot simply dismiss Mecaria's testimony. Moreover, even if Luna did not ask, Hardy may have been obliged to disclose that the threats, if any, were made. Clearly, Hardy's threats would have been significant impeachment material and this claim raises the potential application of <u>Giglio</u> and its progeny.

Mejia is also critical of Luna's failure to request instructions on any lesser included offenses, like voluntary manslaughter. The trial judge even questioned whether such instructions should be included, but Luna declined. According to Luna's affidavit the trial strategy was self defense. Apparently, Luna implies that inconsistent instructions on

---

[1] <u>Giglio v. United States</u>, 405 U.S. 150 (1972)

lesser offenses would have undermined that defense. But, oddly, Luna also avers "(t)here was no evidence of any provocation on behalf of the deceased." If that were so, self defense would seem to be a rather poor strategy and a lesser included offense instruction may have been desirable. There is no indication that Mejia demanded Luna refuse the inclusion of lesser offense instructions and if there is some trial evidence from which the jury could have reasonably inferred the existence of the supportive facts, he was entitled to the instructions. Hunter v. State, 647 S.W. 2d 657, 658 (Tex. Crim. App. -- 1983) (en banc). Respondent's simple reliance on a "trial strategy " argument and the presumption of correctionness, especially when considered with Luna's failure to call Marcus, ought not be, without more, sufficient to conclude that Luna's decision was reasonable and non-prejudicial.

    Mejia's final complaint against Luna is his failure to investigate Mejia's juvenile offense for aggravated assault. Had he done so, Mejia claims he would have been able to show that the assault victim's testimony was substantially and prejudicially false and, as a result, it provided an improper basis for the opinion testimony of another witness that Mejia was not a suitable candidate for probation. Luna's defense is that Mejia could have explained the discrepancies during his testimony at the punishment phase of his trial, but he "did not do this." But, in fact, Mejia did try to defend himself by challenging the accuracy of the prosecutor's evidence. Regardless, that should not be deemed an adequate substitute for his lawyer researching his criminal record, examining any

5

transcripts and preparing an informed and effective cross examination of the state's punishment witnesses. For example, in Rompeilla v. Beard, 545 U.S. 374, 385-86 (2005), the Court found counsel's failure to examine the court records of the defendant's prior conviction that the state was probably going to rely on during the sentencing phase to be ineffective assistance. Reasonable efforts, the Court observed, would include obtaining the file, learning what the state knew of the crime, discovering any mitigating evidence and anticipating the details of any aggravating evidence. Luna's failure to assist Mejia in rebutting the state's witnesses may have been ineffectiveness and may have adversely effected the outcome of the punishment phase.

Mejia's last claim is a Batson[2] claim. He asserts that the state's use of six of its ten strikes to eliminate six of the eight remaining eligible Hispanic individual jurors raises an inference of purposeful discrimination. Based upon that fact he argues that Luna's failure to challenge the strikes constitutes ineffective assistance. Of course, in the absence of any challenges, Mejia cannot, as Respondent points out, show that any challenge would have been sustained. Luna avers that he did not feel the strikes were racially motivated, but now the Court can only guess what other possible race-neutral motives were behind the strikes. Cf. United States v. Ferguson, 23 F.3d 135, 141 (6th Cir. 1994). Appointed counsel's discovery may not be realistically expected to aid Mejia's claim, but he ought to be given a chance to find out.

---

[2]   Batson v. Kentucky, 476 U.S. 79 (1986)

Of course, it may ultimately be determined that Mejia's claims have no merit, however, in the opinion of this Court, based on the present record in this case, there is enough doubt that the state court's decision was based on a reasonable determination of the facts in light of the evidence before it to merit further development by competent counsel.

The Court, therefore, **RECOMMENDS** that the pending "Motion for Summary Judgment" (Instrument no. 14) of Respondent, William Stephens, be **DENIED** without prejudice to being re-urged, if justified, after further proceedings.

The Clerk **SHALL** send a copy of this Report and Recommendation to the Parties who **SHALL** have until **Friday, July 21, 2015**, to have written objections, filed pursuant to 28 U.S.C. §636(b)(1)(C), **physically on file** in the Office of the Clerk. The Objections **SHALL** be electronically filed and/or mailed to the Clerk's Office at P.O. Drawer 2300, Galveston, Texas 77553. Failure to file written objections within the prescribed time **SHALL** bar any Party from attacking on appeal the factual findings and legal conclusions accepted by the District Judge, except upon grounds of plain error.

**DONE** at Galveston, Texas, this _____30th_____ day of June, 2015.

_____
John R. Froeschner
United States Magistrate Judge