IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| DAVID MEJIA, TDCJ # 863486, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 6:13-CV-47 |
| | § | |
| WILLIAM STEPHENS, Director, | § | |
| Texas Department of Criminal Justice - | § | |
| Correctional Institutions Division, | § | |
| Respondent. | § | |

## MEMORANDUM OPINION and
## ORDER FOR CONDITIONAL GRANT OF WRIT OF HABEAS CORPUS

## TABLE OF CONTENTS

I.   BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
     A.   Procedural Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
     B.   Factual Background  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

II.  LEGAL STANDARDS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
     A.   The Anti-Terrorism and Effective Death Penalty Act . . . . . . . . . . . 9
     B.   Summary Judgment Standard in Habeas Corpus Proceedings . . . . . 12
     C.   *Strickland* Standards for Ineffective Assistance of Counsel  . . . . . . 13

III. ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
     A.   Ineffective Assistance of Counsel:  Jury Instructions . . . . . . . . . . . 15
          1.   Guilt-Innocence Phase  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
               a.   Deficient Performance . . . . . . . . . . . . . . . . . . . . . . . . 16
               b.   Prejudice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
          2.   Punishment Phase . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
               a.   Deficient Performance . . . . . . . . . . . . . . . . . . . . . . . . 27
               b.   Prejudice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
          3.   Section 2254(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

      B.    Ineffective Assistance of Counsel:  Marcus Mejia's Testimony and
Luna's Conflict of Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

IV.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

## MEMORANDUM OPINION AND ORDER

In this habeas action, Petitioner David Mejia has filed a petition seeking relief from his conviction and sentence for murder.  Respondent filed an Amended Motion for Summary Judgment [Doc. # 47], to which Petitioner responded [Doc. # 51] and Respondent replied [Doc. # 53].  After the Honorable John R. Froeschner, United States Magistrate Judge, entered a Report and Recommendation [Doc. # 54], this Court entered an Order [Doc. # 57] that adopted the recommendation in part, granting summary judgment to Respondent on certain claims; deemed the Petition a summary judgment motion on remaining claims; and withdrew the reference to the magistrate judge.  The parties then filed supplemental briefing as instructed.  *See* Petitioner's Supplement [Doc. # 58]; Respondent's Supplement [Doc. # 59]; Petitioner's Response [Doc. # 61]; Respondent's Response [Doc. # 60].  Having now considered the Petition, Report and Recommendation, objections, briefing, all matters of record, and applicable legal authorities, the Court determines that summary judgment should be **granted in part** for Petitioner on Petitioner's claim of ineffective assistance of counsel for failure to request additional jury instructions and **granted** in favor of

Respondent on all other claims.

# I.    BACKGROUND

## A.    Procedural Background

Petitioner David Mejia is serving a life sentence for murder for the fatal stabbing of Marcos Torres. Mejia was tried in the 377th Judicial District Court for Victoria County, Texas, Case No. 98-5-17,336-D, Honorable Robert C. Cheshire presiding. Judge Cheshire appointed attorney Alex Luna to represent Mejia at trial. On February 25, 1999, the jury returned a verdict of guilty on the charge of murder. Clerk's Record [Doc. # 9-11], at 22.[1]  That same day, the jury assessed Mejia's sentence at life imprisonment and a $10,000 fine.  *Id.* at 30.  The court entered judgment and sentence. *Id.* at 37.

On March 26, 1999, Mejia, represented by Luna, filed an appeal to the Court of Appeals for the 13th District of Texas in Corpus Christi, Cause No. 13-99-00160-CR.  On June 1, 2000, the Court of Appeals affirmed Mejia's conviction. *See Mejia v. State*, No. 13-99-160-CR, 2000 WL 34252057, at *1 (Tex. App.—Corpus Christi 2000, pet. ref'd).

In 2012, Mejia filed a *pro se* state habeas writ, WR-75,955-02, raising, among

---

[1]    In this Memorandum, all page citations to state court records refer to the Bates-stamped numbers on the upper or lower right corners of the page.

other claims, claims that Luna's assistance was constitutionally ineffective.[2]   On

December 3, 2012, Judge Cheshire entered Findings of Fact and Conclusions of Law.

*See* Writ WR-75,055-02 [Doc. # 9-23], at 87 ("FFCL").   On March 20, 2013, the

Texas Court of Criminal Appeals denied the writ without written order.   *See id.* at

Action Taken Sheet.

 Petitioner timely filed a *pro se* Petition for Writ of Habeas Corpus [Doc. # 1]

in this Court on July 19, 2013.   Judge Froeschner appointed counsel for Petitioner and,

on September 16, 2016, Petitioner filed an Amendment to Petition for Writ of Habeas

Corpus [Doc. # 45] ("Petition").   The parties then filed and briefed cross-motions for

summary judgment.

B.     <u>Factual Background</u>

In the early morning on April 17, 1998, Mejia fatally stabbed Marcos Torres at

Alicia's Place, a bar in Victoria.   The appellate court summarized the facts of the

murder as follows:

The State's evidence showed that [Mejia] went with Johnny Arce to a

---

[2]     Mejia previously had filed a *pro se* state habeas writ, Writ WR-75,944-01 [Doc. # 9-22], in 2011, more than ten years after his conviction and sentence.   The state trial court found that Luna, who had represented Mejia on direct appeal, had rendered ineffective assistance of counsel on appeal "by not advising [Mejia] of his right to file a *pro se* petition for discretionary review."   *Id*. at 42.   The Texas Court of Criminal Appeals subsequently granted permission for Mejia to file a petition for discretionary review and Mejia filed his second writ, WR-75,955-02, in 2012.

bar in order to help him fight some people. A fight resulted including several people, including [Mejia] and the victim, Marcos Torres. During the fight Marcos Torres was stabbed in the heart and killed. Minutes later [Mejia] told his sister, "I cut him," and "[H]e had a gun." "It was either my life or his." Afterwards he went to an apartment where he told John Gomez that he had "stabbed some dude." [Mejia] showed Gomez how he had stabbed the victim; he reached back with his left hand and pulled the knife out of his left, rear pants pocket and stabbed forward. [Mejia] indicated that he had stabbed him in the middle of the chest. Lorenzo Dominguez was present when [Mejia] arrived at the apartment. He heard [Mejia] say, "I got the mother f----. I stabbed him."

The medical examiner's testimony showed that Torres died from a stab wound to the heart. He testified that the knife used to kill Torres was capable of causing death or serious bodily injury.

[Mejia] testified that when the fight started Torres swung at him, and he pushed Torres back twice. Torres lifted up his shirt, revealing a gun. As Torres approached him and started pulling out the gun [Mejia] pulled out a knife and stabbed him. His testimony was that he did not mean to stab him. He admitted that he could have turned and run away from Torres without pulling the knife.

*Mejia*, 2000 WL 34252057, at *1.

At Mejia's trial for murder, Luna did not request, and the trial court did not give, any jury instructions regarding lesser included offense of manslaughter, which would have carried a maximum prison sentence of twenty years. Rather, he relied entirely on the argument that Mejia had acted in self-defense. At the charging conference for the guilt-innocence phase, when the court explicitly noted that the charge did not submit any lesser included offenses to the jury, Luna confirmed that

he wanted to submit the charge without any such instructions:

> THE COURT:      Do you have any further requested instructions?
>
> MR. LUNA:       No further requested instructions.
>
> THE COURT:      This does not include submission of any lesser—anything on any lesser included offenses to the jury, based upon the testimony and the position—and the self-defense instruction. This is the Charge of the Court that you want to submit; is that correct?
>
> MR. LUNA:       That is correct.

Reporter's Record [Doc. # 9-15], at 84-85. The jury rejected self-defense and returned a verdict of murder.

At the charging conference for the punishment phase of Mejia's trial, the drafted charge did not include a "sudden passion" instruction. When asked by the court, Luna declined the opportunity to submit any further instruction to the jury:

> THE COURT:      Ya'll have had a Charge of the Court as to Punishment earlier, so you've had an opportunity to read through it. If the State's ready, do you have any objections or further requested instructions?
>
> MR. HARDY:      No, your Honor.
>
> THE COURT:      If the defendant's ready?
>
> MR. LUNA:       Yes, we're ready.
>
> THE COURT:      Do you have any objections or further requested instructions?

MR. LUNA:        No, sir.

THE COURT:       I'll have the clerk file stamp it.

Reporter's Record [Doc. # 9-17], at 116.  The sudden passion defense, if successful, would have reduced the maximum term of imprisonment to twenty years.  The jury returned with a sentence of life imprisonment and a $10,000 fine.

After Mejia's conviction was affirmed on direct appeal,[3] Mejia filed a state habeas petition claiming that Luna rendered ineffective assistance of counsel when he failed to request jury instructions on manslaughter and sudden passion.[4]  Luna provided an affidavit, *see* Writ 75,944-02 [Doc. # 9-23], at 39-42 ("Luna Affidavit"), stating that his exclusive theory of the case was self-defense:

GROUND TWO:   Trial counsel rendered ineffective assistance by

---

[3]     The direct appeal court held that "the jury's verdict [that Mejia intentionally or knowingly caused Torres' death by stabbing] was not so contrary to the overwhelming weight of the evidence that it was clearly wrong and unjust." *Mejia*, 2000 WL 34252057, at *1.

[4]     Mejia's *pro se* state writ raised multiple grounds for relief, including Mejia's claim that Luna rendered ineffective assistance of counsel by failing to request lesser included instructions on criminally negligent homicide, manslaughter, and sudden passion (Ground Two) and by failing to call Mejia's brother, Marcus Mejia, as a witness (Ground Three).  *See* Writ 75,944-02 [Doc. # 9-23], at 6-9.  *Id.* at 7 (second ground alleged that Luna "rendered ineffective assistance by failing to request lesser-included instructions on criminal negligent homicide, manslaughter, and sudden passion in support [of] the evidence presented during trial.").  *Id.* at 8 ("Based on [Mejia's] testimony that he reacted out of fear [cited above in the petition], the evidence supported a punishment phase instruction on "Sudden Passion.").

failing to request lesser included instructions on criminal negligent homicide, manslaughter, and sudden passion in support [of] the evidence presented during trial.

RESPONSE: ***The strategy of the whole trial was self-defense.*** This was brought out in voir dire and in questioning of all the witnesses. The testimony of the whole trial centered around applicant's contention that the deceased had a gun. My recollection was that applicant's position was that he was not guilty of any thing [sic] because of his self defense strategy. That was why he plead[ed] not guilty and agreed to testify on his behalf on this contention of self-defense. There was no evidence of any provocation on behalf of the deceased. Applicant had gone to the confrontation with the knowledge of the purpose and had armed himself with the weapon, a knife.

Luna Affidavit, at 40 (emphasis added).

The state habeas court rejected Mejia's claim. The habeas court's opinion read, in its entirety, as follows:

On the 3rd day of December, 2012, the Trial Court determines as follows after having reviewed the pleadings and papers filed in this application, the Reporter's Record of the trial, after viewing State's Exhibit 6 (videotape statement of David Mejia) admitted at trial, and after using the Court's personal recollection:

[T]he affidavit of Applicant's trial attorney ALEX LUNA is credible;

Applicant's attorney provided effective assistance of counsel;

Applicant's ground 3 claim should alternatively be barred by the doctrine of laches if it is determined that ALEX LUNA's response in his affidavit is not specific enough.

The District Clerk is ORDERED to now forward the application and other filed documents to the Court of Criminal Appeals with the Trial

Court's Findings of Facts and Conclusions of Law.

*See* FFCL, at 87. The Texas Court of Criminal Appeals denied the writ without written order.

## II. LEGAL STANDARDS

### A. The Anti-Terrorism and Effective Death Penalty Act

This federal petition for habeas corpus relief is governed by the applicable provisions of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"). *See Woodford v. Garceau*, 538 U.S. 202, 205-08 (2003); *Lindh v. Murphy*, 521 U.S. 320, 335-36 (1997). Under the AEDPA, federal habeas relief based upon claims that were adjudicated on the merits by the state courts cannot be granted unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 7-8 (2002); *Cobb v. Thaler*, 682 F.3d 364, 372-73 (5th Cir. 2012).

For questions of law or mixed questions of law and fact adjudicated on the merits in state court, this Court may grant habeas relief under 28 U.S.C. § 2254(d)(1) only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established" Supreme Court precedent. *See Kittelson v. Dretke*,

426 F.3d 306, 318 (5th Cir. 2005). Under the "contrary to" clause, this Court may afford habeas relief only if "the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts." *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000) (internal quotation marks, citation, and alterations omitted).

The "unreasonable application" standard permits federal habeas relief only if a state court decision "identifies the correct governing legal rule from [the Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407. "In applying this standard, we must decide (1) what was the decision of the state courts with regard to the questions before us and (2) whether there is any established federal law, as explicated by the Supreme Court, with which the state court decision conflicts." *Hoover v. Johnson*, 193 F.3d 366, 368 (5th Cir. 1999). The focus for a federal court under the "unreasonable application" prong is "whether the state court's determination is at least minimally consistent with the facts and circumstances of the case." *Pape v. Thaler*, 645 F.3d 281, 292-93 (5th Cir. 2011) (internal citations and quotation marks omitted); *see Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001) ("Even though we cannot reverse a decision merely because we would reach a different outcome, we must reverse when we conclude that

the state court decision applies the correct legal rule to a given set of facts in a manner that is so patently incorrect as to be 'unreasonable.'")

On factual issues, the AEDPA precludes federal habeas relief unless the state court's adjudication of the merits was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d)(2); *Martinez v. Caldwell*, 644 F.3d 238, 241-42 (5th Cir. 2011). The state court's factual determinations are presumed correct unless rebutted by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see Jackson v. Anderson*, 112 F.3d 823, 824-25 (5th Cir. 1997).

This Court may only consider the factual record that was before the state court in determining the reasonableness of that court's findings and conclusions. *Cullen v. Pinholster*, 563 U.S. 170 (2011). Review is "highly deferential," *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam), and the unreasonableness standard is "difficult [for a petitioner] to meet." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

## B. Summary Judgment Standard in Habeas Corpus Proceedings

In ordinary civil cases, a district court considering a motion for summary judgment is required to construe the facts of the case in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986) ("evidence of the nonmovant is to be believed, and all justifiable inferences are to be

drawn in his favor"). "As a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases." *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000). This principle is limited, however; Rule 56 applies insofar as it is consistent with habeas rules. *See Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002). "Therefore, § 2254(e)(1)—which mandates that findings of fact made by a state court are presumed to be correct—overrides the ordinary summary judgment rule that all disputed facts must be construed in the light most favorable to the nonmoving party." *Id*. Unless the petitioner can rebut the presumption of correctness by "clear and convincing evidence" regarding the state court's findings of fact, those findings must be accepted as correct. *Id*. Thus, the Court may not construe the facts in the state petitioner's favor where the prisoner's factual allegations have been adversely resolved by express or implicit findings of the state courts, and the prisoner fails to demonstrate by clear and convincing evidence that the presumption of correctness in 28 U.S.C. § 2254(e)(1) should not apply. *See Marshall v. Lonberger*, 459 U.S. 422, 432 (1983); *Sumner v. Mata*, 449 U.S. 539, 547 (1981).

### C. *Strickland* Standards for Ineffective Assistance of Counsel

Under *Strickland v. Washington*, 466 U.S. 668 (1984), a criminal defendant demonstrates that his counsel rendered ineffective assistance by showing that (1)

counsel's performance was deficient, and (2) the defendant actually was prejudiced

by the deficient performance.

> To demonstrate deficient performance, the defendant must show that, in light of the circumstances as they appeared at the time of the conduct, "counsel's representation fell below an objective standard of reasonableness" as measured by "prevailing professional norms." There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." . . . .

> To demonstrate prejudice under *Strickland*, [the defendant] must show that counsel's deficient performance was "so serious as to deprive him of a fair trial, a trial whose result is reliable." This requires the showing of a reasonable probability that but for counsel's deficiencies, the result of the proceeding would have been different.

*Rhoades v. Davis*, 852 F.3d 422, 431–32 (5th Cir. 2017) (quoting *Strickland*, 466 U.S.

at 687-89, 694) (alteration omitted). "A reasonable probability is a probability

sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. This

requires a "substantial, not just conceivable, likelihood of a different result."

*Pinholster*, 563 U.S. at 189 (internal citation and quotation marks omitted).

Review of counsel's performance is deferential, and counsel enjoy a strong

presumption that their conduct is within the "wide range" of the bounds of

professional norms. *Strickland*, 466 U.S. at 689. A petitioner's burden is to show

"that counsel made errors so serious that counsel was not functioning as the 'counsel'

guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Any "strategic

decisions" made by trial counsel "must be given a strong degree of deference."

*Rhoades*, 852 F.3d at 432. A "strategic" decision is one that "is expected, on the basis of sound legal reasoning, to yield some benefit or avoid some harm to the defense." *St. Aubin v. Quarterman*, 470 F.3d 1096, 1103 (5th Cir. 2006) (internal quotation marks and citation omitted).

On habeas review, when a state court has adjudicated a claim of ineffective assistance of counsel on the merits, the petitioner bears an especially heavy burden:

> The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is ***any*** reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Richter*, 562 U.S. at 105 (internal citations and quotation marks omitted) (emphasis added). *See Trottie v. Stephens*, 720 F.3d 231, 240-41 (5th Cir. 2013) ("'even a strong case for relief does not mean the state court's contrary conclusion was unreasonable,'" quoting *Richter*, 562 U.S. at 102).

## III. <u>ANALYSIS</u>

Mejia brings two claims of ineffective assistance of counsel. First, he claims that Luna was ineffective for failure to request jury instructions on lesser included offenses and the sudden passion defense. Second, he claims that Luna was ineffective

for his failure to call Petitioner's brother, Marcus Mejia, to the stand and because of Luna's undisclosed actual conflict of interest arising from his separate representation of Marcus.

## A.    Ineffective Assistance of Counsel:  Jury Instructions

Mejia claims that Luna rendered ineffective assistance when he failed to request a jury instruction on manslaughter at the guilt-innocence phase of his trial, and a sudden passion instruction at the punishment phase.  Mejia exhausted this claim before the state habeas court, which denied the claim.  For the reasons that follow, this Court concludes that the writ should be granted because the state habeas court's adjudication of Mejia's claim "resulted in a decision that . . . involved an unreasonable application" of "clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

### 1.    Guilt-Innocence Phase

#### a.    Deficient Performance

Mejia argues that Luna's performance was "deficient" under *Strickland* standards.

Mejia was tried for murder, which requires proof that the actor "intentionally or knowingly" caused the death of an individual.[5]  A sentence of life imprisonment is

---

[5]    Under Texas law, "[a] person commits an offense [of murder] if he . . . . intentionally
(continued...)

authorized for murder, which is a first degree felony.[6]

At the conclusion of the guilt-innocence phase of Mejia's murder trial, Luna declined the trial court's invitation to submit jury instructions regarding manslaughter, a lesser included offense to murder. Manslaughter requires proof that the actor "recklessly" caused a death.[7] As a matter of law, Mejia was entitled to submit the instruction to the jury upon a showing of "some evidence that would permit a rational jury to find that the defendant is not guilty of the greater offense [murder] but is guilty of the lesser included offense [manslaughter]," *Stadt v. State*, 182 S.W.3d 360, 363 (Tex. Crim. App. 2005), even if the evidence in support of the lesser offense was "weak, impeached, or contradicted." *Cavazos v. State*, 382 S.W.3d 377, 383 (Tex.

---

[5]     (...continued)
or knowingly causes the death of an individual." TEX. PENAL CODE § 19.02(b)(1). The law defines "intentionally" as acting with "conscious objective or desire to engage in the conduct or cause the result." TEX. PENAL CODE § 6.03(a), and "knowingly" as acting with "aware[ness] that his conduct is reasonably certain to cause the result." TEX. PENAL CODE § 6.03(b).

[6]     *See* TEX. PENAL CODE § 19.02(c) (murder is first degree felony); TEX. PENAL CODE § 12.32(a) (prison term for first degree felony is "life or . . . any term of not more than 99 years or less than 5 years").

[7]     TEX. PENAL CODE § 19.04(a) ("A person commits an offense if he recklessly causes the death of an individual"). A person is "reckless" when he is "aware of but consciously disregards a substantial and unjustifiable risk" that the result of his conduct will occur. TEX. PENAL CODE § 6.03(c). Manslaughter is a "lesser included offense" to the offense of murder because it differs from murder "only in the respect that a less culpable mental state suffices" to establish commission of the offense. TEX. CODE CRIM. PRO. § 37.09(3).

Crim. App. 2012) (citing *Bell v. State*, 693 S.W.2d 434, 442 (Tex. Crim. App. 1985)).[8]

The maximum prison sentence for manslaughter is twenty years.[9]

In state habeas proceedings, when asked to explain his failure to request additional jury instructions, Luna's rationale for his decision was that "[t]he strategy of the whole trial was self-defense." Luna Affidavit, at 40. In 1999, when Mejia was tried, Texas law regarding self-defense provided that defensive use of "deadly force" was justified if, among other requirements, a defendant showed that the deadly force was used "when and to the degree he reasonably believe[d] the deadly force [wa]s immediately necessary: (A) to protect himself against the other's imminent use or attempted use of unlawful deadly force; or (B) to prevent the other's imminent commission of aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery." TEX. PENAL CODE § 9.32(a)(3) (1995)

---

[8] Mejia's *pro se* petitions also argued that the jury should have been instructed regarding criminally negligent homicide, also a lesser included offense to murder, TEX. PENAL CODE § 19.05(a), which applies when the actor "ought to be aware of a substantial and unjustifiable risk" that the result of his conduct will occur. TEX. PENAL CODE § 6.03(d). *See Stadt*, 182 S.W.3d at 364 (manslaughter involves "conscious risk creation"; criminally negligent homicide involves "inattentive risk creation"). In these proceedings, Mejia's appointed counsel has not advanced the argument regarding criminally negligent homicide. Because the Court holds that habeas relief is warranted regarding the manslaughter instruction, the Court need not and does not address whether Luna also was constitutionally deficient for failing to request jury instructions regarding criminally negligent homicide.

[9] *See* TEX. PENAL CODE § 19.04(b) (manslaughter is second degree felony); TEX. PENAL CODE § 12.33(a) (sentence of imprisonment for second degree felony ranges from two to twenty years).

(current version at TEX. PENAL CODE § 9.32(a)(2) (2007)).[10] Because the self-defense justification is a "defense to prosecution" excluding criminal liability, TEX. PENAL CODE § 9.02,[11] Mejia's jury would have been required to find him "not guilty" of murder if it found that he was justified by self-defense.

A "strategic" decision by counsel is one that "is expected, on the basis of sound legal reasoning, to yield some benefit or avoid some harm to the defense." *St. Aubin*, 470 F.3d at 1103 (internal quotation marks and citations omitted). "'Strategic choices made ***after*** thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" *Rhoades*, 852 F.3d at 434 (quoting *Strickland*, 466 U.S. at 690)) (alteration omitted) (emphasis added). Moreover, if the evidence or law was "double-edged," counsel's decision not to present the evidence is not objectively unreasonable. *St. Aubin*, 470 F.3d at 1103 ("'a tactical decision not to pursue and present potentially mitigating evidence on the grounds that it is double-edged in nature is objectively reasonable, and therefore does not amount to deficient performance'")

---

[10]    The current version is substantively similar, although the numbering has changed. Other portions of Section 9.32, which are not dispositive of the issues before this Court, have been significantly amended since Mejia's trial.

[11]    Once Mejia raised the defense, the State had the burden to prove, beyond a reasonable doubt, that Mejia was not acting in self-defense. *See* Reporter's Record [Doc. # 9-16], at 8 (Guilt-Innocence Jury Charge) ("[I]f you have a reasonable doubt as to whether or not the defendant was acting in self-defense on the occasion and under the circumstances, then you should give the benefit of that doubt to defendant and find him not guilty.")

(quoting *Rector v. Johnson*, 120 F.3d 551, 564 (5th Cir.1997)).  *Strickland* does not require deference to "decisions that are uninformed by an adequate investigation into the controlling facts and law." *Anderson v. Johnson*, 338 F.3d 382, 392 (5th Cir. 2003) (internal quotation marks and alterations omitted).

> Generally, counsel's strategic decisions are afforded deference so long as they are based on counsel's professional judgment.  However, if a purportedly tactical decision is not preceded by a reasonable investigation, then it is not sufficiently informed and not entitled to the deference typically afforded counsel's choices.

*Escamilla v. Stephens*, 749 F.3d 380, 392 (5th Cir. 2014) (internal citations and quotation marks omitted).  The Fifth Circuit has held that "[t]he Court is not required to condone unreasonable decisions parading under the umbrella of strategy." *Richards v. Quarterman*, 566 F.3d 553, 567 (5th Cir. 2009) (internal citation and quotation marks omitted).

Luna's statement of strategy in his affidavit appears to assume that, if he had requested a manslaughter instruction, he would have precluded from pursuing his self-defense theory.  This assumption is based on a misunderstanding of, and insufficient investigation into, the law.  Under Texas law, self-defense is a justification for manslaughter as well as murder.  "[W]here a defendant disclaims intent to kill or injure by alleging accident, he is not prevented from obtaining an instruction on self-defense where it is otherwise appropriate." *Martinez v. State*, 775 S.W.2d 645,

647 (Tex. Crim. App. 1989) (en banc) (defendant's specific denial of intent to kill did not preclude instruction on self-defense); *Sanders v. State*, 632 S.W.2d 346, 348 (Tex. Crim. App. 1982) (if defendant had legal right to self-defense, such right "could inure regardless of whether the discharge of the pistol was accidental or otherwise") (internal citation and quotation marks omitted). *See Alonzo v. State*, 353 S.W.3d 778, 782 (Tex. Crim. App. 2011) ("[B]y arguing self-defense, a defendant is arguing that his actions were justified, and therefore he did not act recklessly") (citing *Willis v. State*, 790 S.W.2d 307, 313-15 (Tex. Crim. App. 1990) (en banc)).

Luna's affidavit, which relies wholly on the self-defense rationale, accordingly fails to provide a reasonable explanation for his decision to decline a manslaughter instruction. Respondent argues that Luna's strategy was to "rely exclusively on a theory of self-defense, and forgo seeking a manslaughter instruction, in attempting to obtain an all-out acquittal." Respondent's Response [Doc. # 60], at 10. *See* Respondent's Supplement [Doc. # 59], at 10 ("trial counsel may have strategically elected not to request a lesser-included offense instruction that would have undermined [his] effort [for an all-out acquittal]"). This argument is unavailing because, in fact, Luna was *not* required to forego the self-defense justification in order to request a manslaughter instruction. To the contrary, he could have argued both theories and, under the law cited above, could have argued that self-defense justified

an "all out" acquittal for manslaughter as well as for murder.

In *Richards v. Quarterman*, the Fifth Circuit held that trial counsel's failure to request an instruction on aggravated assault, as a lesser included offense of murder, was "deficient and not a strategic decision." *Richards*, 566 F.3d at 569. Richards' trial counsel had relied heavily on a self-defense theory at trial. *Id*. at 567. The jury rejected the defense and convicted Richards of murder. On habeas review, the Fifth Circuit held that, even accepting trial counsel's version of her trial strategy, "there does not appear to be any legitimate strategic reason for [trial counsel's] failure to present evidence (or more evidence)" supporting the additional theory that another attack, involving multiple assailants, had taken place and had caused the death at issue. *Id*. at 567; *id.* at 569 ("[I]t would be entirely possible for the jury to believe that Richards did not act in self-defense but also believe that he did not kill [the deceased]"). The Court noted that trial counsel's testimony "strongly suggest[ed]" she misunderstood the relevant law and its application to the facts of the case. *Id*. at 569. It specifically rejected trial counsel's "contention that she did not feel the jury would convict of murder and did not want to give the jury the option of convicting of the lesser offense" as a "post-hoc rationalization." *Id*. (citing *Wiggins v. Smith*, 539 U.S. 510, 526-27 (2003)). The *Richards* court affirmed the district court's grant of habeas relief, concluding that counsel's failure to request the lesser included

instruction "fell below an objective standard of reasonableness, and that the state court's conclusion to the contrary was an unreasonable application of *Strickland*." *Id*. at 569-70.

In this case, Luna's decision to forgo the manslaughter instruction was not "strategic" because, based on "sound legal reasoning," it did not "yield some benefit to or avoid some hard to the defense." *See St. Aubin*, 470 F.3d at 1103. Nor was the decision "double-edged," *see id*., because no harm to Mejia's defense would have resulted from requesting the instruction. Luna's decision to pursue exclusively self-defense, when a manslaughter instruction would have been compatible with that defense, is not entitled to *Strickland* deference because it was "not preceded by a reasonable investigation" into the facts and the law. *See Escamilla*, 749 F.3d at 392; *Anderson*, 338 F.3d at 392.

Luna rendered deficient performance under *Strickland*, falling below an objective standard of reasonableness. *See Rhoades*, 852 F.3d at 431–32; *Richards*, 566 F.3d at 569-70.

### b. <u>Prejudice</u>

To demonstrate prejudice under *Strickland*, a defendant must show that counsel's deficient performance was "so serious as to deprive him of a fair trial, a trial whose result is reliable." *Rhoades*, 852 F.3d at 432 (internal citation and quotation

marks omitted); *see Escamilla*, 749 F.3d at 388. This requires the showing of a "reasonable probability" that but for counsel's deficiencies, the result of the proceeding would have been different. *Rhoades*, 852 F.3d at 432; *Escamilla*, 749 F.3d at 387–88. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Escamilla*, 749 F.3d at 388 (quoting Strickland, 466 U.S. at 694, 104 S.Ct. 2052.). "'The likelihood of a different result must be substantial, not just conceivable.'" *United States v. Bourgeois*, 537 F. App'x 604, 619 (5th Cir. 2013) (quoting *Richter*, 131 S.Ct. at 792).

At Mejia's trial, the jury heard ample testimony that would have supported a finding of recklessness (manslaughter), as an alternative to knowing or intentional conduct (murder).[12] In particular, Mejia testified that he had gone to the bar that night to protect his brother Marcus, who was anticipating a conflict with Torres and others, and, if a fight broke out, to "break it up" and get his "baby brother" out fast. Reporter's Record [Doc. # 9-15] at 57-58. Mejia also testified that, during the fight, he stepped between Marcus and another person to protect Marcus, and pushed Marcus back. *Id.* at 61-62. Mejia testified that he then saw the person coming towards him with what he thought was a gun. Specifically, Mejia explained:

> [H]e swung towards me and I pushed him back twice and I started
> stepping back. And my little brother [Marcus] almost fell over

---

[12] As stated above, the maximum prison term for manslaughter was twenty years.

backwards, because I was moving. And I turned over to see if that dude [Torres] was coming towards me, and when I seen him lift up his shirt I saw something, which was a shiny piece, which was a gun that I seen. . . . . I heard somebody go, "You little bastard, your ass is mine" or something like that. . . . . I was stepping away slowly and [Torres] approached me faster and he started pulling the weapon out, whatever he had. And me, I saw it. It was a gun. These people say this and that, but I know what I saw. And he approached me and I pulled my knife out of my back pocket and . . . I stuck him. And I didn't think the knife went in him. And at that time, I turned and ran."

*Id*. at 62. Mejia further testified that he drew his knife against Torres only when Torres "approached [him], pulling for the gun, at that same time," that he ran off immediately, and that he wished it had never happened. *Id*. at 63-64.

On cross-examination, when the prosecutor asked Mejia if he knowingly stabbed Torres, Mejia testified repeatedly that he had not. When asked, "And you intentionally and you knowingly stabbed Marcos Torres; correct?," Mejia responded, "No, sir. I didn't intentionally and knowingly stab anybody." *Id*. at 66. When asked, "you are saying that it was an accident?," he responded, "It was, sir." *Id*. He testified that he "didn't go over there with the intention to hurt anybody," and stated again that the incident was "an accident." *Id*. at 67. When asked, "[D]id anyone make you stab Marcos Torres?," he testified, "Well, sir, I felt that my life was endangered." *Id*. at 70. On redirect, Mejia stated, "I didn't mean to stab anybody. . . . I was scared." *Id*. at 80. He testified that, if he had run away, he could have been shot in the back with a gun. *Id*. Luna argued to the jury that Mejia only acted in trying to get away from

Torres, who had "directed his aggression" towards Mejia, Reporter's Record [Doc. # 9-13], at 11, and that could not have simply retreated and outrun a gun. Reporter's Record [Doc. # 9-16] at 34.[13] All this testimony and argument was consistent with a finding of recklessness and manslaughter.

The Court holds that there is a "substantial likelihood" that, if the jury instructions on manslaughter had been submitted, the result of the proceeding would have been different. *See Richter*, 562 U.S. at 112. Rather than asking the jury to consider the lesser included offense, Luna only asked the jury to "vote for acquittal" based on the self-defense theory. Reporter's Record [Doc. # 9-15], at 112. If the jury had been given a manslaughter instruction, it could have credited Mejia's testimony that he was motivated by the desire to protect his little brother, that the stabbing was an "accident," and that he hadn't gone to the bar with the intention to hurt anybody.

---

[13]     The issue of whether Torres had a gun was vigorously contested at Mejia's trial. Although Mejia was the only witness to testify that he saw Torres' gun, the trial testimony supported the theory that multiple people at the scene were panicked about a gun. *See* Reporter's Record [Doc. # 9-13], at 65 (investigator testifies that Flores and Arce said a girl at scene was yelling, "He's got a gun"); Reporter's Record [Doc. # 9-14], at 163 (Arce testifies that he heard someone yell "Gun. Gun."); *id*. at 190 (Flores testifies that she heard someone scream "Gun" and ran towards the car); Reporter's Record [Doc. # 9-15], at 28 (Martinez heard someone yell "A gun, a gun"). The jury could have concluded that Torres actually did not have a gun. However, even if it had, the jury also could have concluded that Mejia ***mistakenly*** believed that Torres had a gun and that Mejia's actions were prompted by that mistaken belief. This mistaken belief could have been consistent with "reckless" actions by Mejia. *See* TEX. PENAL CODE § 6.03(c) ("A person is "reckless" when he is "aware of but consciously disregards a substantial and unjustifiable risk" that the result of his conduct will occur").

Reporter's Record [Doc. # 9-15], at 66-67. The jury then would have had the option to convict Mejia of manslaughter. Manslaughter was a middle ground that would have given the jury a way to register a conclusion that Mejia did not meet all the requirements for acquittal based on the self-defense justification but had not acted knowingly or intentionally.

Because manslaughter carries a maximum prison term of twenty years, the prejudice to Mejia was significant. The Court concludes that Mejia was prejudiced at the guilt-innocence phase under *Strickland*. *See Escamilla*, 749 F.3d at 388; *Bourgeois*, 537 F. App'x at 619.

### 2.    Punishment Phase

#### a.    Deficient Performance

Luna declined to request a "sudden passion" instruction at the punishment phase of Mejia's trial. The defense of "sudden passion" is a statutory defense to murder that a defendant may raise at the punishment phase and, if successful, reduces the maximum term of imprisonment to twenty years. TEX. PENAL CODE § 19.02(d); *id*. § 12.33. To succeed on the defense, Mejia would have been required to prove by a preponderance of the evidence that he was under the immediate influence of a "sudden passion" that was provoked by Torres or a person acting with Torres, that the sudden passion arose "at the time of the offense," and that Mejia's provocation had

an "adequate cause." TEX. PENAL CODE § 19.02(a)(2); *id*. § 19.02(d). Adequate cause is defined as "cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." TEX. PENAL CODE § 19.02(a)(1). *See McKinney v. State*, 179 S.W.3d 565, 569 (Tex. Crim. App. 2005).

As with the manslaughter instruction at the guilt-innocence phase, a sudden passion charge was warranted if "some evidence" supported the defense. *Trevino v. State*, 100 S.W.3d 232, 238 (Tex. Crim. App. 2003) (en banc).

> It does not matter that the evidence supporting the submission of a sudden passion instruction may be weak, impeached, contradicted, or unbelievable. If the evidence thus raises the issue from any source, during either phase of trial, then the defendant has satisfied his burden of production, and the trial court must submit the issue in the jury charge—at least if the defendant requests it.

*Beltran v. State*, 472 S.W.3d 283, 290 (Tex. Crim. App. 2015) (internal citation and quotation marks omitted)). *See Trevino*, 100 S.W.3d at 238; *McKinney*, 179 S.W.3d at 569; *Sanchez v. State*, 745 S.W.2d 353, 357 (Tex. Crim. App. 1988).

At the punishment phase of trial, the court asked Luna if he was requesting further jury instructions, and Luna stated that he was not. Reporter's Record [Doc. # 9-17], at 116. When asked during habeas proceedings to respond by affidavit to his failure to request the sudden passion instruction, Luna stated, "The strategy of the whole trial was self-defense." Luna Affidavit, at 40. However, as with the

manslaughter instruction, Luna's professed strategy of self-defense did not preclude the sudden passion instruction at the punishment phase. "[S]udden passion and self-defense are not mutually exclusive." *Beltran*, 472 S.W.3d at 290 (citing *Medlock v. State*, 591 S.W.2d 485, 487 (Tex. Crim. App. 1979)) (holding that a defendant convicted of murder after unsuccessfully arguing self-defense at the guilt-innocence phase was entitled to sudden passion instruction at punishment phase). Evidence of an accident also does not preclude the sudden passion instruction. *Trevino*, 100 S.W.3d at 240 ("the sudden passion charge should be given when it is raised by the evidence, even if it conflicts with other evidence in the case") (internal citation and quotation marks omitted).

At punishment, because the jury already convicted Mejia of murder, it necessarily had rejected the self-defense theory advanced by Luna. Luna had no strategic reason not to request an instruction on sudden passion. *See St. Aubin*, 470 F.3d at 1103 (a "strategic" decision as one that "is expected, on the basis of sound legal reasoning, to yield some benefit or avoid some harm to the defense") (internal citation and quotation marks omitted). In fact, the "sudden passion" theory was consistent with Luna's theory of the case at the punishment phase arguments.[14] Mejia

---

[14] The elements of sudden passion, which must be proven by a preponderance of the evidence, are (1) adequate provocation, (2) existence of a passion or an emotion such as fear, terror, anger, rage, or resentment, (3) the homicide occurred while the passion

(continued...)

had testified that he did not arrive at the bar intending to kill anyone and was not initially involved in the fight but that, when he saw Torres "pulling for the gun," he reacted by stabbing Torres once, then turned and ran. Reporter's Record [Doc. # 9-15], at 63-64. *See id.* at 64 (Mejia testified that he "didn't want for nothing like this to happen that night"). A "defendant's testimony alone is sufficient to raise a defense issue requiring an instruction in the charge." *Beltran*, 472 S.W.3d at 290. Luna argued to the jury that Torres was involved in the fighting, that there was no initial aggression by Mejia, and that Mejia only stabbed Torres once because Mejia's intent was to get away from the gun.[15]

To the extent Luna believed that his self-defense theory precluded a sudden passion instruction, his belief was not based on a reasonable professional judgment. As set forth above, Texas law clearly permitted both theories. *See Beltran*, 472 S.W.3d at 290; *Medlock*, 591 S.W.2d at 487. Luna's decision not to pursue sudden

---

[14]    (...continued)
still existed and before there was reasonable opportunity for the passion to cool, and (4) a causal connection between the provocation, the passion, and the homicide. *McKinney*, 179 S.W.3d at 569. *See Beltran*, 472 S.W.3d at 289-90 ("[t]o justify a jury instruction on the issue of sudden passion at the punishment phase, the record must at least minimally support" the four elements).

[15]    *See* Reporter's Record [Doc. # 9-17], at 132 (arguing that Torres unquestionably was involved in a fight and was fighting); *id.* at 133 (arguing no initial aggression by Mejia); *id.* at 133-34 (arguing that jury should consider fact that Mejia never got rid of or tried to hide the knife, never ran from police, came to police voluntarily, and cooperated with police); *id.* at 134-35 (arguing that incident was a "one wound incident," and not a situation in which Mejia continued to stab or hurt Torres).

passion appears to have been based on a misunderstanding of the law and "fell below an objective standard of reasonableness as measured by prevailing professional norms." *See Rhoades*, 852 F.3d at 431-32. Given that Mejia already had been convicted of murder and was facing a life sentence, Luna had no tactical reason not to request the sudden passion instruction. *See St. Aubin*, 470 F.3d at 1103.

Luna's performance at the punishment phase was deficient under *Strickland*.

## b. <u>Prejudice</u>

Luna asked the jury to sentence Mejia to ten to twenty years imprisonment for murder. Reporter's Record [Doc. # 9-17], at 135. The jury rejected his arguments, and sentenced Mejia to life. The sudden passion defense would have fit with the arguments Luna already was presenting to the jury at the punishment phase. If the jury had credited Mejia's evidence, the sudden passion instruction would have given them a means to express that opinion, with a maximum prison term of twenty years.

If Luna had presented and argued the sudden passion defense, and if the Court had instructed the jury about the defense and its impact on sentencing after a murder conviction, there is a "substantial likelihood" that the jury would have returned a lesser sentence. *See Richter*, 562 U.S. at 112.[16] An instruction from the court would

---

[16] If the Court finds that counsel rendered deficient performance, the cumulative effect of any deficiencies may, in some cases, be sufficient to satisfy *Strickland*'s prejudice prong, even if no particular instance of deficient performance is enough, by itself, to
(continued...)

have given much greater weight to Luna's arguments for a reduced sentence, and would have communicated to the jury that the law in Texas recognizes that lesser sentences are appropriate when sudden passion is proven. Because the sudden passion defense would have reduced Mejia's murder conviction to a second degree felony, with a maximum prison term of twenty years, the prejudice to Mejia was significant.

### 3.    Section 2254(d)

Mejia presented his ineffective assistance of counsel claim regarding lesser included instructions to the state habeas court, which denied relief on the merits. The habeas court's FFCL stated, "Applicant's attorney provided effective assistance of counsel," and provided no further support or explanation for its decision. FFCL, at 87.

The habeas court's FFCL implicitly makes two mixed findings and conclusions: First, the state court implicitly held that Luna's performance was not deficient under *Strickland*, that is, his performance did not fall "below an objective standard of reasonableness as measured by prevailing professional norms" and, second, the court implicitly held that Mejia was not prejudiced by Luna's performance. *See Rhoades*,

---

[16]      (...continued)
constitute *Strickland* prejudice. *See*, *e.g.*, *Moore v. Johnson*, 194 F.3d 586, 619 (5th Cir. 1999) (capital murder case).

852 F.3d at 431-32.   Each of these holdings is an "unreasonable application" of clearly established federal law under *Strickland* to the facts of Mejia's case.  *See* 28 U.S.C. § 2254(d)(1).[17]

First, the habeas court's determination that Luna's performance was not deficient was an unreasonable application of *Strickland* to the facts of the case.  No informed strategy supported Luna's failure to request lesser included instructions.[18]  Habeas relief is appropriate because there is no reasonable argument that Luna's performance satisfied *Strickland*'s deferential standard. *See Richter*, 562 U.S. at 105. *See Gardner*, 247 F.3d at 560 ("Even though we cannot reverse a decision merely because we would reach a different outcome, we must reverse when we conclude that the state court decision applies the correct legal rule to a given set of facts in a manner that is so patently incorrect as to be 'unreasonable'").

Second, the habeas court's determination that Luna's performance did not prejudice Mejia is an unreasonable application of *Strickland*.  For the reasons stated above, there is a "reasonable probability," sufficient to undermine confidence in the outcome of Mejia's trial, that a fully instructed jury would have either convicted Mejia

---

[17]     *See Williams*, 529 U.S. at 407 (the "unreasonable application" standard permits federal habeas relief only if a state court decision "identifies the correct governing legal rule from [the Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case").

[18]     *See St. Aubin*, 470 F.3d at 1103; *Richards*, 566 F.3d at 569-70.

of manslaughter (reckless rather than knowing or intentional killing), or would have found that Mejia had proven sudden passion (that Mejia acted under the immediate influence of a sudden passion provoked by Torres' actions).  *See Rhoades*, 852 F.3d at 431-32; *Pinholster*, 563 U.S. at 189 ("reasonable probability" requires a substantial, not just conceivable, likelihood of a different result).   Because he is serving a life sentence rather than the twenty year maximum under either manslaughter or sudden passion, the prejudice to Mejia is significant.

The state habeas court's adjudication of Mejia's claim resulted in an unreasonable application of *Strickland* to the facts of the case, warranting habeas relief under Section 2254(d)(1).[19]   The Court will grant a conditional writ of habeas corpus.[20]  Respondent must release Mejia from custody unless the State initiates retrial proceedings within 180 days from the date of final judgment in this Court.

### B.   Ineffective Assistance of Counsel:  Marcus Mejia's Testimony and Luna's Conflict of Interest

Mejia also brings a claim, which he exhausted on state habeas review, that Luna

---

[19]   The Court need not address the state habeas court's factual finding that "[T]he affidavit of Applicant's trial attorney ALEX LUNA is credible." FFCL, at 87.  Even assuming that this finding is correct and Luna's affidavit is credible, Luna's performance fell below *Strickland*'s standards for effective assistance of counsel, and the state habeas court's decision to the contrary was an unreasonable application of *Strickland* under Section 2254(d)(1).

[20]   Courts should dispose of a meritorious habeas petition "as law and justice require." 28 U.S.C. § 2243; *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987).

rendered ineffective assistance of counsel when he failed to call Marcus Mejia to the stand at trial. In these federal proceedings, Mejia has amended his petition and claims that Luna operated under a conflict of interest during Mejia's trial because, unbeknownst to Mejia, Luna simultaneously was representing Marcus in juvenile proceedings. Mejia alleges that Luna did not call Marcus Mejia to the stand because he did not want to risk adversely affecting Marcus' juvenile case. The parties disagree about whether the conflict claim is new, and thus unexhausted, or whether it merely provides additional support for Mejia's exhausted claim that Luna was constitutionally ineffective.

The Court first addresses Mejia's exhausted claim that Luna rendered ineffective assistance when he failed to call Marcus to the stand. Under *Strickland*, Mejia must demonstrate that Luna's performance was deficient, and that Mejia actually was prejudiced by the deficient performance. This Court is bound by the strong presumption that Luna's conduct was within the "wide range" of the bounds of professional norms. *See Strickland*, 466 U.S. at 689. Mejia argues that Luna had no valid reason not to call Marcus, who could have testified that he had seen a gun in Torres' waistband and thus corroborated Mejia's testimony that Torres had a gun. *See* Affidavit of Marcus Mejia, dated June 10, 2016 [Doc. # 45-1]. However, there were multiple colorable reasons not to call Marcus and, whether or not this Court agrees

with those reasons, any "strategic decisions" made by trial counsel "must be given a strong degree of deference." *See Rhoades*, 852 F.3d at 432.[21] Mejia thus fails to show ineffective assistance of counsel under *Strickland* standards, especially when the "doubly deferential" standard of *Strickland* plus Section 2254(d) is applied. *See Richter*, 562 U.S. at 105.

Next, the Court addresses Mejia's claim that Luna operated under a conflict of interest. The threshold question is whether the claim is new and unexhausted, or whether it "relates back" to the ineffectiveness claim above.

If the Court assumes that the conflict of interest claim is new, then, as Mejia concedes, it would be unexhausted and procedurally defaulted. Mejia therefore must demonstrate cause and prejudice for the default. *See Martinez v. Ryan*, 566 U.S. 1

---

[21]     In state habeas proceedings, Luna's affidavit stated that Mejia had not asked him to call Marcus to the stand, and that "one possible reason was could have been that [Mejia] did not want to implicate his brother in the offense." Luna Affidavit, at 40-41. Given that Mejia clearly was protective of Marcus, as shown through his trial testimony, this statement is plausible. In addition, the value of Marcus' potential testimony was limited because, according to Marcus' affidavit, he would have testified only that Torres had a gun in his waistband, and would not have corroborated Mejia's testimony that Torres pulled the gun out during the fight or threatened Mejia. *See* Affidavit of Marcus Mejia [Doc. # 45-1], at 1 ("Marcos Torres lifted up the front of his shirt and I saw a handgun stuck in the front of his waist. About that time, I saw my brother, David Mejia, jab a knife at Marcos Torres"). Furthermore, if Marcus had taken the stand, the statements in his affidavit would have been subject to cross-examination and, given Marcus' youth and his relationship and loyalty to Mejia, the jury could have discounted his credibility. *See St. Aubin*, 470 F.3d at 1103 (if the evidence was "double-edged," counsel's decision not to present the evidence is not objectively unreasonable under *Strickland*).

(2012); *Coleman v. Thompson*, 501 U.S. 722 (1991). Because Mejia had access to

Marcus during trial and in the years since trial, he has not made an adequate showing

that he could not have discovered the Luna's conflict of interest prior to 2016.[22] Most

significantly, Mejia cannot show prejudice for the default because, completely apart

from the conflict of interest, Luna had sufficient strategic reasons not to call Marcus

to the stand that would defeat his ineffective assistance of counsel claim.

Alternatively, if the Court assumes that Mejia's conflict of interest claim

"relates back" to his exhausted claim of ineffective assistance of counsel, the claim

nevertheless would fail under *Strickland*.[23] Mejia has not demonstrated that the

---

[22]   *See also* 28 U.S.C. § 2244(d)(1)(D) ("A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from . . . the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence"); *id*. § 2244(b)(2)(B) ("A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless . . . (i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.").

[23]   Mejia seeks to introduce the new facts regarding conflict of interest in this proceeding through an evidentiary hearing. However, he fails to meet the standards in Section 2254(e)(2), which provides that a court "shall not" hold an evidentiary hearing unless Mejia shows "a factual predicate that could not have been previously discovered through the exercise of due diligence" ***and*** that the facts are "sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." As stated above, Mejia has not shown that he could not have discovered, during trial or

(continued...)

additional facts regarding Luna's conflict of interest prejudiced him under *Strickland* because, regardless of the conflict, independent and colorable strategic reasons supported Luna's decision not to call Marcus to testify. *See Rhoades*, 852 F.3d at 431-32 (*Strickland* requires a showing of a "reasonable probability" that, but for counsel's deficiencies, the result of the proceeding would have been different); *see also United States v. Infante*, 404 F.3d 376, 391-92 (5th Cir. 2005) (in case of an attorney's conflict of interest, the courts must determine "whether that conflict adversely affected the representation").

Finally, for all the reasons stated above, equitable tolling is not appropriate in this case. *See Holland v. Florida*, 560 U.S. 631 (2010).[24]

## IV. CONCLUSION

For the reasons stated above, it is hereby

**ORDERED** that Petitioner's Amendment to Petition for Writ of Habeas Corpus [Doc. # 45], deemed a motion for summary judgment, is **granted in part** as to Petitioner's claim that counsel rendered constitutionally ineffective assistance when

---

[23] (...continued)
in the years since, that Luna was simultaneously representing his brother. Moreover, even if he could, the conflict of interest does not establish by "clear and convincing" evidence that, absent the conflict, the jury would not have convicted Mejia of murder.

[24] In any event, this Court cannot conclude that the state court's ruling that Luna's decision not to call Marcus to testify was an unreasonable application of clearly established law satisfying Section 2254(d).

he failed to request additional jury instructions. A writ of habeas corpus is **conditionally granted**. Respondent must release Mejia from custody unless the State initiates retrial proceedings within 180 days from the date of this Court's final judgment. It is further

**ORDERED** that, on all remaining claims, Respondent's Amended Motion for Summary Judgment [Doc. # 47] is **granted**.

The Court will issue a separate final judgment.

SIGNED at Houston, Texas, this **11**[th] day of **October, 2017.**

_____
NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE